Okay, next case is number 06-1154, Frazer v. Schlegel. Ms. Burrows. Good morning, may it please the court, my name is Beth Burrows, attorney for Hardy Frazer in this appeal. This is an interference case and derivation is the issue under 102-F. And so the question before us is who invented the subject matter of the count? The invention of the count is a method for making a papillomavirus virus-like particle that I'm going to call a BLP. But conception is the issue that's going to control here. That's correct, yes. The standard is a definite and permanent idea of the complete and operative invention. Now, you're going to emphasize that Dr. Frazer had a definite and permanent idea. Yes. They're going to say, yeah, but it wasn't the complete and operative invention. I presume that's what they're going to say, that's what they're saying except the numbers. Yeah, that's the way this kind of breaks down. They're going to focus on one half and you're going to focus on the other half. Why was it a complete and operative invention that he had this definite and permanent idea of? Frazer had a complete and operative invention because if you look at the count, the count is reproduced on the inside of the front cover of all the Frazer briefs, so it's Frazer claim 65 or Frazer claim 67 or Frazer claim 97. I'm going to be focusing today on Frazer claim 65. Claim 65. The method claim. Yes, the method claim. Method for making a papillomavirus DLP using known starting materials and recombinant DNA technology. That's interesting. Everybody will admit the method works, right? Yes, everybody. We admit the method works. Schlegel's inventors admit the method works. The board admits the method works. Does he then have to have had a test that showed it worked at the time he had the definite and permanent idea? He certainly does not. How then would it be a complete and operative invention? It would be complete because all the steps were taught and the method works. And what Frazer had, Frazer had a result. He had what he called virus-like particles. He stood at a scientific conference, showed those particles to the world, and announced this general method would work for any type of papillomavirus to make a DLP. And it's operative because the method works, and it's been proven to work. And conception and enablement are two different concepts, just like priority and derivation are two different concepts. Burroughs. Burroughs, yes. It says conception and enablement are two different concepts, and Price and Hedwig and many other cases say conception and priority and derivation are two different concepts. And we're dealing with a derivation case here. And if you look at the Applegate case, in Applegate, the inventor there had a new method. He didn't test his method, but he had a new method, and his name was Scheer, and he conveyed that to Mr. Applegate. But the board is going to show us that what Fraser was holding forth as the result of his method were these 35 nanometer particles, not the VLPs that are the complete and operative invention, which have to be 55 or so. You can accept that finding of the board and still find for Fraser. And the reason is because Fraser said, I have invented a method to make a VLP. Those were the words out of his mouth. He said, here's my result. This method works. The method does work. And that's all he had to do. He did not have to test. Does he have to show it works? He does not have to show it works to have a conception. Applegate says you don't have to test. Fraser didn't have to test his particles. The only way to actually confirm that there was immunological reactivity of those, that those particles were confirmationally correct and would be useful in a vaccine context, is to actually test them. And that's what's not required for conception. Rose Welcome says that. Applegate says that. MacMillan says that. Are you drawing a distinction between reduction to practice and enablement when you put conception and enablement together? Yes. Testing is part, in this case, testing is part of reduction to practice. And conception and reduction to practice are two different things. Well, I have a problem with your argument in the statement by the board, page 63 of paper 263, where the board says, after it makes a whole lot of findings, it says, in light of these findings, we hold that the preponderance of the evidence indicates that, and I take it that that means they are finding as a fact, they're making a factual finding, that although there may have been great hope, there was not a reasonable expectation that the goal of virus-like particles, etc., etc., would be achieved, based on the small, irregularly shaped particles disclosed in the Australian application, or any version of the Jew manuscript. Now, are you saying that that finding is not supported by substantial evidence? No. Why isn't that dispositive? If we were to accept that finding as supported by substantial evidence, why doesn't that answer your claim of the conception? The proper question, which the board didn't answer, and the board failed to apply at McGee to MacMillan, is whether or not what Fraser made would work. And that is not necessary for conception. Fraser made something. The dispute is whether or not it would work. And the board repeatedly, it's in our brief, time and time again, said that Fraser has not, and still not today, has not shown us a test that shows that the particles are correct. You read, as I understand it, you read the board as saying that an essential element of conception was that there be a test. Is that right? That's right. That's what we're there for. I don't see that in the board's opinion. As I read the board's opinion, what the board said was he hadn't shown this reasonable expectation, because he hadn't made particles seem like the particles he was trying to do. And indeed, further support for that is that he didn't show any test that had established that fact. I don't read the board, to me at least, as saying, although it used the word test three times, that an essential element in order to establish conception is that he conducted tests, which proved out. It's our position that the board repeatedly relied on the fact that there was no testing. And part of the board's confusion here was that this whole, this, we started off in the preliminary motions phase, and the board looked at Fraser's Australian priority application and whether or not that was enabling. We haven't appealed that ruling. The board decided that the priority application wasn't enabling within the meeting of 112. But satisfying all the requirements of 112 is not required for conception, and many, many cases of this court and his predecessor make it clear that that's not the case. The board conflated the 112 and the 102 requirements, and in looking at conception, failed to separately consider whether or not Fraser had a complete conception. Applegate and Macmillan are not mentioned in the board's decision. There's a distinction between what you need for conception for a priority and what you need for conception in a derivation case. This court has clearly drawn a distinction between those two situations, and the board conflated the two. It seemed to me that the board was talking about reduction of practice, not conception. But the problem that may have been troubling the board is that we do have cases which say that conception and reduction of practice go together. And, of course, they didn't phrase it that way. And so it is rather confusing because nobody disputes that the concept worked, was recorded in a patent application, a foreign patent application. I guess I don't remember the law of constructive reduction of practice well enough to know if a foreign patent application is deemed a constructive reduction of practice. Have you looked into that? It can be. It has to meet the requirements of Section 112, just like a U.S. priority application would. The board determined that the Australian priority application did not meet the requirements of 112, and we haven't appealed that ruling here. And we understand that there's a difference between having full enablement to enable the full scope of the invention to enable a patent application and having a complete conception and a derivation in 102F of patent-defeating statutes. And our position is that Fraser's conception happened by July of 1991. There's ample evidence that by that time he knew what the complete method was. He announced that to hundreds of scientists at a conference, including the Schlegel inventors. Schlegel does not have a conception for his own invention on this record prior to December of 1991. So you have July, disclosure, December, Schlegel's earliest possible conception date on this record. The only other conception date that Schlegel has on this record is June of 1992. Fraser filed a second patent application in July of 1992, a PCT application with many additional working examples, and the board found that that application fully meets the requirements of 112. So we're asking this court to defeat Schlegel's right to a patent because he heard about the conception of the invention before he had a conception. But we're asking that this court also consequently award Fraser a patent because Fraser has a fully enabling patent application at the Patent and Trademark Office, and that's not being disputed here. So we're not saying give Fraser a patent because he had the first conception. We're saying deny Schlegel a patent because he heard about the conception before Schlegel ever had a conception, but Fraser still gets a patent because on the facts of this case, our disclosure is not prior art to us, like it was in the Rasmussen case. Our disclosure is not prior art to us. We're entitled to a patent based on our PCT application. Suppose, for the sake of argument, we were to agree with the board that you hadn't shown conception in the Australian application. Is that the end of your case, or do you have an alternative argument as to why you should still prevail? I guess our only alternative argument is when Fraser had a conception was at the July 1991 presentation. But the board said that the 1991 presentation basically replicated what was in the Australian application, and if the Australian application means that he didn't have conception of the invention, he also, I assume, didn't have an invention to pass on to Schlegel at the presentation. Well, conception is a question of law that this court can review de novo, and it is our strong position that the board applied the wrong law in evaluating whether or not Fraser had a complete conception in July of 1991, which is when he filed his patent application and when he gave his presentation. So, we don't accept that. It pretty much turns on whether there was conception established in the Australian application. Yes. All right, let's hear from the other side. Mr. Olsteen. The way it plays the court, it represents the court of Schlegel. First, conception. It's a complete and operative idea. Does claim 65 describe a complete and operative invention? At what time? That's where I think… Just as it stands, does it describe something that is complete and works? In fact, Schlegel made it work, didn't he? Eventually, yes. He did exactly the right thing. So, the only thing that you seem to be complaining about, and that's what was in the Australian filing. So, you seem to be saying because Dr. Fraser had some impurities in his test tubes or whatever it was that threw him off so that he didn't produce the exact right VLP, that he is precluded from a conception? The answer to that question is yes, but I have to explain why I am saying yes. But our case law has repeatedly said, Applegate, Burroughs, you don't have to have a test. You don't have to produce test results for conception. You have to have a definite and permanent idea, which he did. It's right there. The claim states it completely. And it is complete and operative. It's exactly what Schlegel made work. So, why isn't this a conception? Well, let me try to explain what I'm saying. The complete and operative idea. What was Schlegel's wish, hope, I mean, Fraser's wish, hope, and desire at the time. What he wanted to do was make recombinantly particles that duplicated the size, the shape, and the confirmation of the native virus. Why did he want to do that? It was very important so he could get the confirmation of epitopes that everybody thought was required. So, in order to have a conception, you have to know how to make such a particle. And he did, didn't he? He showed Schlegel and the whole world how to do it. The answer to that question is he did not, because what he made, and this is where... Well, but, no, just a second. What he actually did could have been affected by, who knows, atmospheric pressure, maybe the stingrays in Australia had somehow affected his experimental device. He didn't actually do it, but he taught the world how to do it, didn't he? Why isn't that a definite and permanent idea of a complete and operative invention? But the answer to that question is he did not teach the world how to do it because under the Burroughs case... The world followed his method when they did it. He just happened to have, for some reason, not done it himself. Well, what the world followed is the idea of recombinantly expressing these proteins in the hope and desire and wish to make these particles that mimic the size and shape and the confirmation was around for a long time. Long prior to Fraser, people had unsuccessfully expressed the HPV, L1 protein in various systems and were not able to make these particles. So the only thing that really distinguishes the claims is the making of the VLP, not the fact that you can recombinantly express HPV, L1 protein. Everybody knew that. Everybody had done it. What they hadn't been able to do was to make something that mimicked the size, the shape, and the confirmation of the virus particles. And who showed them how to do it? Who showed the world how to do it? Well, the answer would be it was not Fraser at that time. Because what the board basically held, and I think Judge Friedman pointed to it, is when you look at what happened, and when you look at the evidence that was presented, Fraser's own evidence shows he was not in possession of a definite and permanent... He wasn't in possession of the VLP. No, he was not. But he had the idea to make it. But if the only thing that distinguishes that claim is the idea of making it, in other words, the hope or the wish or the desire... It's interesting that you're playing on the Burroughs language that conception is not a mere hope. That's what the Burroughs says. But interestingly, even the board says this goes beyond a mere hope. This is a great hope. A great hope. So it's already beyond the disqualifying factor in Burroughs. He had more than a great hope. He actually had the thing. It worked. I don't... He just didn't do it himself. But he isn't required to do it himself by our law. So what's the problem here? The problem here is what I think is what's said in the Burroughs case. If someone has an idea of attempting to make something, and then he goes out and attempts to do it, and it shows that he was not able to accomplish the result he wanted to achieve. When he attempted to do it, that's objective evidence that at that time he was not in possession of the idea. And not only that, but... This is a method. This isn't the thing. That might apply if we were talking about a composition. He's teaching here a method. And what he teaches is exactly the method that produces the VLP. Now, he didn't do it himself. Who knows? Dirty test tubes. Whatever it was that caused him to come up with the wild type rather than the proper VLP, we don't know. But he's not required by the law to do it. Applegate burrows a whole line of decisions. I disagree that Applegate burrows, in that case, say that at all. It's really a question, I think, this points up. This is an interference. The law of interference is that the first to conceive who is diligent to reduce to practice, or however that works, is the first inventor. And then we have all of the complications in the complex technology of biotech where we have some cases which say, yes, but you don't really have a conception unless you do it because this science is so complicated. And then we have every point of degree along the line which turns with the completeness of the concept in the first place, perhaps the skill of the inventor as well. Here we also have the Australian patent application which shows that this inventor was sufficiently confident to actually go on record. Here we have the paper given at the scientific meeting. I don't know if that report was cited in the prosecution of the Schlegel application or not, whether it was prior art. We haven't discussed here the issue of derivation, although it's well covered in the briefs. But these are complex issues, but I think what we need to have very much in mind is that we're talking about an interference and in my mind the interference indeed draws the distinction between conception and reduction of practice. So we need you to tell us why that's wrong. Well, first of all, just to make sure the record is correct, in the interference in the priority case, Schlegel won that case. No, in the United States it's the first to invent, not the first to file. So you're telling that he wins because he was the first to file? No, he won the interference because they could not approve an invention date for priority prior to Schlegel's filing date. He didn't establish priority to the Australian application. Or reduction of practice or anything in the priority case. Doesn't have to show reduction of practice, it has to show conception in order to prevail. Yes, he has to show for the derivation case conception and I want to make sure I reserve some time because I think Schlegel did have a prior conception along the lines that Judge Rader is saying because Schlegel, prior to that meeting, had the idea of making, by recombinant techniques, something that mimicked the virus so as to have it. He just hadn't yet successfully done it. I think what you're telling us is contrary to what the board found. No, that's not contrary to what the board found because in the Schlegel-Fraser case it never reached that issue because the only issue that was raised in the case was whether or not they had a prior conception. Once they ruled there was no prior conception on the basis of the evidence put in by Fraser, they never reached in this interference the issue as to whether or not Schlegel had a prior conception. They never reached the issue as to whether or not the disclosure was sufficiently enabling and whether or not Fraser actually set it up to Schlegel to make him not an independent inventor. So those issues were not addressed. The board actually ended the case by saying there was no conception. It never got to the second half of it, whether or not in this case there was a prior conception. If we send it back, they'll get a chance to do the rest, right? If we send it back. But I want to go back to the issue of conception because there's a point that I'm not getting across here. If I come up here and I say I want to make it, it's a method claim, part and parcel of a method claim. The only thing that distinguishes that method claim from the prior art is the making of a BLP because the prior art had expressed these proteins recombinantly and we're not able to make what we're calling this particle, recombinant particle that mimics the size and the shape of the native virus. This is the key figure. And I believe where the board went is they looked at the evidence and said, did Frazier at the time of the presentation know how to make that? That's what they wanted to know. Was he in possession of that idea or was it still in philosophy? But he was in possession of the idea. He just didn't do it. Is he required to do it? No one's going to question that his method is exactly what produced it. He taught Schlegel at the Seattle conference. Schlegel himself says he went back and changed the way he was doing things. He did something different thereafter. He wasn't doing this. He learned from Frazier, the father of all this, and he goes back and does it different and produces it. I don't think Schlegel ever said anything like that on the record. Well, it's very clear that what he said was he wasn't doing this. He changed his method. No, I think what was said was, if you look in our briefs, is that they had been using a recombinant technique. He'd been doing the old stuff. He changes it and does something else. He goes after a VLP. No, no. He was attempting to produce a recombinant protein with the conformational epitopes in January of 1991. That idea was already in his mind. He already had in his mind, as we indicated in our brief, the idea of using the types of cells that he eventually used in September. He went out and used a system completely different than the system that Frazier used, where Frazier failed and was not able to produce something with conformational epitopes. He was able to produce it. Yes, you can say, generally, I disclose I would like to make something that mimics the virus by the use of recombinant techniques, but that, to me, is not a conception. That's just a broad idea. Let's recombinantly produce this protein. Let's recombinantly produce that protein. I get up and just tell the world, go out and recombinantly produce it. I go out and I attempt to recombinantly produce it. I show that I wasn't able to. Then someone else is able to subsequently do it. Then I go back and I take credit because I said to somebody, let's recombinantly produce it. What I think the board did was look at the objective evidence and say, let's look at what he produced. It doesn't look like a virus. It's misshaped. It's the wrong size. That was the factual holdings, as I think Judge Friedman correctly pointed out. Based on those factual holdings, which were not challenged by Frazier, in which there was substantial evidence because there was all kinds of evidence of record to show they were misshaped, had the wrong size, they concluded that he was not yet in possession of how to make this VLP that would have these conformational epitopes that everybody knew that was required. The mere fact that he said, let's recombinantly produce it, there was no evidence that he knew or could be able to do it any more than anyone who had been working in the prior art had been able to produce these VLPs, although they recombinantly expressed in different systems the HPV-L1 proteins. So I think what they were really saying is this. Anyone can get up and say I have an idea. Anybody can say this is what I would like to do. Let's look at the objective evidence when he attempted to produce it. And they concluded factually, we can't reverse those facts, that he wasn't able to do it. So they said the mental part, how do you know it's in somebody's mind? You need to look at the objective evidence of record. And when you look at the objective evidence, although he says I can produce it, he was not able to produce it. Why he wasn't able to produce it, the board said I don't know. There's nothing of evidence to show what happened, why it happened, whether or not that particle he had would have any use whatsoever. They didn't require testing. They said the evidence of record, as presented by Frazier, showed he did not know, he was not in possession of the idea, because he couldn't do it. He had enough confidence to go to Seattle and tell the world that this was his definite and permanent idea. Yes, but there was, in the record, all kinds of testimony. Enough confidence that Schlegel bought it and went and did it. Well, we strongly disagree. I understand. I stated that somewhat contentiously. With that, because he already was working on it. What happened, he was not successful. Frazier was not successful. He then went to a system different than Frazier's, and he did eventually make a recombinant protein that had the correct properties. Well, perhaps he had an improvement, but he's not talking about improvement. This is an interference in which he goes back to the threshold of the concept and says, that's not yours, that's mine. That's what's sort of troublesome. I would have no trouble at all with Schlegel having improved upon that which he was presented by Frazier. But the problem is, is he already had that idea before he went. And what they're actually saying is penalize Schlegel for showing up at a ten-minute presentation. Forget about all the work he did previously. Well, you get to make that argument if we go back, right? Well, I think that argument is already... There's no factual dispute upon the fact that he had that idea. That's already in the record. It's undisputed. I mean, it's a grand application. It's already there. And the fact that he showed up for a ten-minute presentation and now take everything that Schlegel did and award it to Frazier seems to me that this is not derivation. This is not abrogating those things where someone hands someone else and says, please test this for me. I think that it has this property. Test it. The person tests it and demonstrates that it works and then that person claims it's an inventor. That's the abrogation. Those are the cases cited by Frazier. It's apples and oranges. Thank you, Mr. Earls. Ms. Burroughs. Ms. Burroughs, I think our presiding judge has put her finger on the problem and that is in a complex area, conception often folds into reduction to practice. Why isn't that the case here? Frazier did not have a failure. He had a success. As you noted, he announced his success to the world, announced his method that does work to the scientific community and he had experimental results. He had particles and he called those virus-like particles and he said these are going to be useful in a vaccine so he had actually made something. And so he went further than abrogated. Frazier actually completed his method and did something and the question is whether or not those particles would be useful. In his presentation in Washington did he say that he had actually achieved his objective? Yes. There's ample testimony in the record about what Frazier said. Schlegel has not disputed what Frazier said at the meeting. Frazier showed slides of his working example. There was also an abstract distributed and all of those things said, hey, look, I've made a three-dimensional particle called a virus-like particle in a recombinant system with papillomavirus and this is the key to a cervical cancer vaccine and that turned out to be true. I take it there's no text of his remarks in the record, is there? There's no what, I'm sorry? Text of his remarks. Oh, yes, his entire declaration is part of the record? Pardon? Oh, there was no recorded transcript? He didn't get up at this meeting and have a written statement that he read. That's correct. There is a declaration in the record of what he said at the meeting. There is corroborating testimony from a variety of witnesses verifying what he said at the meeting and the fact that he had in his mind a general method to make a papillomavirus virus-like particle from a new type of cell. So it's really not in dispute what he said at the meeting? That's right, it's not in dispute. The abstract's a written statement of his presentation, is it? Right, and he said actually in the presentation he said more than is in the abstract. The abstract was handed out at the beginning of the conference in a book and then there's testimony about what he said. But I'm not sure you've answered the question. Why in this complex area don't you have to have a reduction to practice to have a conception? This is a derivation case and all you need to have is every element of the count, which Fraser had. He completed his method and so to that extent he has enough practice of something. He actually carried out his method and made something and he doesn't need testing which is part of reduction of practice. The method calls for obtaining the VLPs. He obtained a VLP and if you look at Burroughs' Welcome the inventor need not know that his invention will work for conception to be complete. But I think what the question that Judge Rader's posing to you is if the claim requires that, as he said, does that mean it has to work? In other words, suppose the method, he works out the method and tries and it doesn't work. Has he satisfied the requirements of the client? Maybe he wouldn't have ended up getting a patent but a conception is a definite and permanent idea of a specific and definite method and that's what Fraser had. It has to be more than just getting the idea, doesn't it? Is it enough just to have an idea? I mean, I may have an idea that I'm going to be able to I'm going to have a method for making tennis balls so that you could have three of them for sale for ten cents. It's hard to say that's a conception if every time you try it, the tennis balls that it makes are no good, they don't bounce. The difference between your situation and Fraser's situation is that Fraser's method does work if you have a specific and definite idea of an operable method. The method is operable here, there's no question about that. Then you have a complete conception because all of your cases say the conception is about how definite was the idea when the inventor had it and the other thing you need to keep in mind is that the Macmillan case says specifically that even if you're going to consider the doctrine of simultaneous conception and reduction of practice that doctrine does not apply in a derivation case. Okay. Any more questions? Thank you, Ms. Burrows, and thank you, Mr. Osteen. The case is taken under submission. All rise. The operable court is adjourned tomorrow at 1210 a.m. Thank you.